IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT SAUNDERS )
a/k/a Shamsidin Ali, )
 )
      Plaintiff, )
 )
v. ) Civ. Action No. 13-1276-GMS
 )
COMMISSIONER CARL DANBERG, )
et al., )
 )
      Defendants. )

**MEMORANDUM**

The plaintiff, Robert Saunders ("Saunders"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, brings this lawsuit pursuant to 42 U.S.C. § 1983,[1] the Americans with Disabilities Act, 42 U.S.C. § 12131, and 42 U.S.C. § 1981[2] and § 1985.[3] (D.I. 38.) Saunders appears *pro se* and was granted permission to proceed *in forma*

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]Section § 1981 proscribed discrimination on the basis of race. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 385 (3d Cir. 1999). Section 1981 has no application for claims based upon a disability. *See Gordon v. Tygart Valley Regional Jail*, 2013 WL 786480 (N.D. W.Va. Feb. 4, 2013); *Brown v. County of Los Angeles*, 2012 WL 7784413 (C.D. Calif. Mar. 27, 2012). The § 1981 claim is frivolous and will be dismissed.

[3]The amended complaint does not refer to a specific part of § 1985. Presumably, Saunders relies upon § 1985(3). To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy of two or more persons; (2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of person to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or to the deprivation of any right or privilege of a citizen of the United States." *Petrosian v. Collins*, 479 F. App'x 409, 410 (3d Cir. 2012) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001). The amended complaint contains no such allegations. The § 1985 claim is frivolous and will be dismissed.

*pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 9.) The court reviewed and screened the complaint (D.I. 3) and amended complaint (D.I. 11) and dismissed the complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and the amended complaint as noncompliant with Fed. R. Civ. P. 20. (*See* D.I. 36, 37.) Saunders was given leave to amend. An amended complaint (D.I. 38) was filed on February 19, 2014.[4]

## I. BACKGROUND

The amended complaint (D.I. 38) raises claims against Delaware Governor Jack Markell ("Markell"), former Delaware Department of Correction ("DOC") Commissioner Carl Danberg ("Danberg"), current DOC Commissioner Robert Coupe ("Coupe"), the DOC, Healthcare Director Dr. Vincent Carr ("Dr. Carr"), former VCC Warden Perry Phelps ("Phelps"), VCC Deputy Warden James Scarborough ("Scarborough"), Bureau Chief of Correctional Healthcare Services James Welch ("Welch"), Medical Director Dr. Laurie Spraga ("Dr. Spraga"), and VCC Director of Nursing Michelle Swell-Jones ("Jones"). Saunders states that he suffers from a number of medical conditions including a kidney cyst, glaucoma, cataracts in both eyes, degenerative disc disease, brain tumors, irregular heartbeat, uncontrolled urination, and serious dermatologic issues. (*Id.* at ¶ 4.) Saunders alleges that he is an individual with disabilities and that the unconstitutional conditions have denied him access to prison services and activities in violation of the ADA. (D.I. 38, ¶ 1.) It appears that he continue to assert violations of § 1983.

---

[4]On March 1, 2014, State defendants filed an answer to the amended complaint without the benefit of screening by the court or service upon any defendant. (D.I. 39.)

The original complaint alleges that a September 2007 sonogram indicated that Saunders has a lesion in the left kidney. When Saunders was seen in December 2007, he was told the mass is a complex cyst. The condition was left untreated until 2011 when Saunders had constant complaints of pain, passing blood in his urine, and urination issues. Beginning in 2011, Saunders met with nephrologist Dr. Michael Yosin ("Dr. Yosin") and consultation orders were written on three different occasions for Saunders to see a urologist. (D.I. 3, ¶ 3.)

On February 18, 2013, Saunders was approached by a correctional officer for transport to see a physician off-site who was either an eye specialist or dermatologist. Saunders advised the correctional officer he had previously seen both and, because he was in the law library working on a post conviction issue, he signed a refusal for treatment not knowing that the appointment was with a urologist. Saunders met with Dr. Yosin on July 12, 2013, and he gave Saunders the results of blood tests from June 2012 through July 2013. The testing indicated that Saunders had sustained 16 percent loss of kidney function. While not clear, it appears that a written consultation referral to see a urologist on an urgent basis was issued. Saunders alleges that, to date, he has not seen medical personnel for his kidney issue. (D.I. 3 at ¶ 4; D.I. 38 at ¶ 9.) The amended complaint alleges that a radiologist report, dated September 19, 2013, indicated bladder wall thickening without evidence of mass. (D.I. 38 at ¶ 9.) On an unknown date, opthalmologist Dr. Gary Markowitz, diagnosed Saunders with cataracts and glaucoma. (D.I. 38, ¶ 10.) Saunders alleges that there has been no intervention by defendants to address the conditions. (*Id.*)

Saunders alleges that on October 15, 2013, an unnamed defendant was fully aware that a "wheelchair was to be made available to plaintiff," yet he has not received same. (*Id.*) On an

unknown date, Saunders was seen by Drs. DuShuttle and Hershey and who prescribed a firm and/or two mattress and a first floor/bottom bunk assignment, both ignored by all defendants. (D.I. 38, ¶ 5.) On an unknown date, Saunders was moved from T-1 to D-Building. (*Id.* at ¶ 8.) While there he fell in the shower. (*Id.*) Saunders alleges that the bathrooms in T-1 and T-2 are the only ones in ADA compliance. (*Id.*) On an unknown date, Saunders was housed in the infirmary. (*Id.* at ¶ 10.) He alleges the infirmary violates ADA standards because the patient alarm system is disconnected in individual rooms. (*Id.*) The amended complaint alleges that overcrowding has resulted in an aged prison population, lacking specialized programs. (*Id.* at ¶ 11.)

On an unknown date, Saunders was placed in administrative segregation for forty-one days but was not provided a reason for his placement there. (*Id.*)

Saunders submitted grievances that were ignored. In addition, upon final review, Welch denied a medical grievance for a mattress and he continues to deny the grievance. (*Id.*) Saunders alleges that he has complained to all defendants, via grievance. (*Id.* at ¶ 6.)

Markell, Danberg, Coupe, Dr. Carr, Welch, Phelps, Scarborough, Dr. Spraga, and Jones are named as defendants based upon their supervisory positions and responsibility to inmates to provide safe and secure housing and medical care. (D.I. 38, ¶¶ 6, 16-22.) In addition, Saunders alleges that Phelps and Jones failed to adequately train their respective staff. The amended complaint also alleges that Carr is responsible for establishing policies and procedures to ensure that in-house and specialist orders are carried out. (*Id.* at ¶ 19.) Markell is sued in his official capacity, and Danberg, Coupe, Carr, Welch, Phelps, Scarborough, Dr. Spraga, and Jones are sued in their personal capacities. (*Id.* at ¶¶ 13-14, 16-22.)

4

Saunders alleges that the DOC operates a correctional facility (presumably VCC) in violation of the ADA. (*Id.* at ¶ 15.) He further alleges that Danberg, Carr, Phelps, Scarborough, Coupe, Jones, and Dr. Spraga were deliberately indifferent to his serious medical needs in violation of the Eight Amendment to the United States Constitution. (*Id.* at ¶ 23.) Saunders alleges that as a result, he has suffered, and will continue to suffer kidney, skin, disc/hip, blood pressure, eye disorders, pain and suffering, and emotional distress for their refusal to correct the conditions. (*Id.*) Saunders seeks injunctive relief and compensatory and punitive damages. He also requests counsel.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Saunders proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a

court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Saunders leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in

the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Personal Involvement/Respondeat Superior

The original complaint and amended complaint attempt to raise claims against Markell, Danberg, Coupe, Dr. Carr, Welch, Phelps, Scarborough, Dr. Spraga, and Jones. The claims are raised against these defendants based upon their supervisory positions. In addition, Saunders alleges that Phelps and Jones failed to adequately train their respective staff and that Carr is responsible for establishing policies and procedures to ensure that in-house and specialist orders are carried out.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (unpublished) (citing *Iqbal*, 556 U.S. at 675-77); *Rode v. Dellarciprete*, 845 F.2d at 1207).

Saunders provides no specific facts with regard to foregoing defendants' personal involvement as is required to state a claim for violations of his constitutional rights. Instead he alleges in a conclusory manner that the defendants are responsible for his alleged constitutional violations by reason of the matters under their purview. Nor are there facts indicating that Markell, Danberg, Coupe, Dr. Carr, Welch, Phelps, Scarborough, Dr. Spraga, and/or Jones expressly directed the deprivation of his constitutional rights, or created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. Moreover, the U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236. Saunders was given an opportunity to cure his pleading defects, but failed to do so. However, since it appears plausible that Saunders may be able to articulate a medical needs claim against the foregoing defendants (or name alternative defendants), he will be given one final opportunity to amend his pleading. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (unpublished) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

8

For the above reasons, the court will dismiss the claims against Markell, Danberg, Coupe, Dr. Carr, Welch, Phelps, Scarborough, Dr. Spraga, and Jones for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).[5]

**B. ADA**

Saunders alleges that the DOC violated his rights under the ADA for failure to accommodate his disabilities. *See* ADA, Title II, 42 U.S.C. § 12101 *et seq.* Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* Title II applies to the state prisons, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998), and authorizes private lawsuits for both money damages and injunctive relief against public entities that violate its provisions. *See* 42 U.S.C. § 12133.

To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007). Under Title II, a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA. *See, Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa*, 483 F. App'x 759, 763 (3d Cir. 2012) (unpublished); *see*

---

[5]The court also notes that the complaint is deficiently pled because, in many instances, it fails to inform the reader when or where the conduct complained of occurred.

9

*also* 28 C.F.R. § 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

However, in order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless invalid." *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). Hence, Saunders must initially state a valid claim under Title II of the ADA. *Id.* at n.32.

Assuming Saunders is a qualified individual with a disability, he fails to state a claim under the ADA. It appears that Saunders bases his claim, in part, upon medical decisions with which he disagrees. *See, e.g., Isley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (unpublished); *Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."). In addition, Saunders makes generic allegations of ADA violations. Nor is it clear from the allegations that discrimination occurred based upon Saunders' alleged disabilities.

The ADA claim, as currently pled, is deficient. Saunders has failed to state a claim against the DOC for a violation of Title II of the ADA. Accordingly, the court will dismiss the claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Saunders will be given leave to amend the claim.

## IV. CONCLUSION

For the above reasons, the court will dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). The court will deny without prejudice to renew, the request for counsel that is contained in the amended complaint. Saunders is advised that future requests for counsel shall be filed in a separate motion. Saunders will be given one final opportunity to cure his pleading defects.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

June 9, 2014
Wilmington, Delaware