IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT SAUNDERS<br>a/k/a Shamsidin Ali,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER CARL DANBERG,<br>et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. Action No. 13-1276-GMS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM**

The plaintiff, Robert Saunders ("Saunders"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, brings this lawsuit pursuant to 42 U.S.C. § 1983[1] and the Americans with Disabilities Act, 42 U.S.C. § 12131. (D.I. 48.) Saunders appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 9.) All previous complaints were dismissed and Saunders was given one final opportunity to cure his pleading defects. (*See* D.I. 42, ¶ 3.) The third amended complaint (D.I. 48) was filed on September 2, 2014. As stated by Saunders, the "amended complaint totally rewrites the original complaint." (*Id.*)

**I. BACKGROUND**

The third amended complaint (D.I. 48) raises claims against Delaware Governor Jack Markell ("Markell"), former Delaware Department of Correction ("DOC") medical contractor Correct Care Solutions ("CCS"), former DOC Commissioner Carl Danberg ("Danberg"), current

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

DOC Commissioner Robert Coupe ("Coupe"), current DOC medical service provider Connections Correctional Healthcare Services ("Connections"), the DOC, former VCC Warden Perry Phelps ("Phelps"), VCC Deputy Warden James Scarbrough ("Scarbrough"), VCC Security Chief John Brennan ("Brennan"), Bureau Chief of Correctional Healthcare Services James Welch ("Welch"), Medical Director Dr. Laurie Spraga ("Dr. Spraga"), VCC Director of Nursing Michelle Swell-Jones ("Jones"), and former CCS Medical Director Dr. Dale Rodgers-Morales ("Dr. Rodgers"). The defendants are sued in their individual and official capacities. (*Id.* at ¶ 17.)

Saunders states that he suffers from a number of medical conditions including high blood pressure, brain tumors, a kidney cyst, degenerative disc disease, and several eye problems. (*Id.* at ¶ 18.) The third amended complaint claims deliberate indifference to needed operations; denial of a wheelchair/cane; failure to comply with the ADA with regard to housing and access to a wordprocessor or a typewriter; violations of the right to due process; and cruel and unusual punishment. (*Id.* at ¶ 26.)

The third amended complaint alleges that during the past two years, Dr. Michael Yosin ("Dr. Yosin") submitted orders regarding Saunders' kidney condition and the need for treatment by a urologist. (*Id.* at ¶ 19.) Saunders has constant pain and uncontrolled urination. Dr. Yosin was informed by the defendants Dr. Spraga, Dr. Rodgers, and Jones that other options were needed due to treatment costs. (*Id.*) In addition, Saunders alleges that he has constant pain as a result of degenerative disc disorders. (*Id.* at ¶ 20.) Years ago, physicians indicated the problems could be corrected through surgery but, as alleged by Saunders, it was denied due to cost considerations. Saunders alleges that the denial of surgery has resulted in worsening of the condition, possibly causing paralysis of the right arm/hand. An MRI has been ordered.

Saunders alleges that Brennan housed him in D-Building, a building that is not ADA-compliant. (*Id.* at 21.) The shower lacked handrails or anything for Saunders to hold onto. In October 2013, Saunders fell in the shower and, upon hearing that Saunders had fallen, Brennan transferred Saunders to administrative segregation where he remained for forty-five days and then returned to general population. Saunders wrote to Danberg, Phelps, Scarbrough, and Brennan regarding the housing placement, but received no response. He also submitted a grievance that was returned and stated that disciplinary actions were not grievable. On January 25, 2011, Saunders submitted an official complaint to Markell regarding the lack of medical attention. (*Id.* at ¶ 22.) Saunders did not receive a response.

Saunders alleges that the Delaware prison medical system is "broken beyond repair." (*Id.* at ¶ 23.) He alleges that overcrowding has burdened the DOC's "inadequate management system that underlie health care delivery." Saunders alleges that the DOC and its medical contractors constantly attempt to cut costs by reducing services. The third amended complaint alleges that as a result of overcrowding, the number of inmates who need services exceed the capacity of funds provided. Saunders concludes that "crowding attempting save monies [sic] is the primary cause of the state's unconstitutional failure to provide adequate/needed medical care to Delaware inmates." Finally, Saunders alleges that each defendant is fully aware of his need for various operations and the medical contractors' refusal to provide said treatment. (*Id.* at ¶ 24.) Saunders seeks declaratory and injunctive relief, and compensatory and punitive damages.

## II. STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state

a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Saunders proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief

4

may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Saunders leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570).

To determine whether a complaint meets the pleading standard as set forth in *Twombly* and *Iqbal*, the court must: (1) outline the elements a plaintiff must plead to a state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (internal citations omitted) (citing *Iqbal*, 556 U.S. at 679; *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

5

## III. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Markell, Danberg, Coupe, Phelps, and Scarbrough are named as defendants based upon their supervisory positions and responsibility to inmates to provide safe and secure housing and medical care. (D.I. 48, ¶¶ 4, 6, 7, 11.) In addition, the third amended complaint alleges that Markell, as governor, has control over the monies allocated to the DOC and the authority to appoint and remove subordinates. (*Id.* at ¶ 4.) It also alleges that Phelps failed to adequately train his staff. (*Id.* at ¶ 10).

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (unpublished) (citing *Iqbal*, 556 U.S. at 675-77; *Rode v. Dellarciprete*, 845 F.2d at 1207).

Saunders provides no specific facts with regard to the foregoing defendants' personal involvement as is required to state a claim for violations of his constitutional rights. Instead, he alleges in a conclusory manner that the defendants are responsible for the alleged constitutional violations by reason of the matters under their purview. Nor are there facts indicating that

Markell, Danberg, Coupe, Phelps, or Scarbrough expressly directed the alleged deprivation of Saunders' constitutional rights, or created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation.

Moreover, the U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

For the above reasons, the court will dismiss the claims against Markell, Danberg, Coupe, Phelps, and Scarbrough as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**B. Medical Needs**

The third amended complaint alleges that Dr. Spraga, Dr. Rodgers, and Jones informed Dr. Yosin that Saunders needed other treatment options due to cost considerations. Dr. Vincent Carr ("Dr. Carr") was named as a defendant in previously dismissed complaints, but there are no allegations directed towards him in the third amended complaint. A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)). Here, the third amended complaint contains no allegations directed toward Dr. Carr. In addition, the allegations directed towards Dr. Spraga, Dr. Rodgers, and Jones are deficient. The third amended complaint does not indicate when or where these defendants allegedly advised Dr. Yosin of the necessity of other treatment options. Thus, the allegations, without more, do not rise to the levels of constitutional violations.

The third amended complaint alleges that the DOC[2] and unnamed medical contract providers (presumably CCS and Connections") constantly attempt to cut costs by reducing services in violation of the Eighth Amendment. Other than this general statement, the third amended complaint does not describe this cost reduction policy, when it was implemented, or how it affected Saunders, other than to allege that in years past he was denied surgery and, on an unknown date, his urologist was asked to seek other treatment options, both due to cost considerations. The third amended complaint makes broad generalizations, but fails to identify specific policies or practices to support his allegations. *See Estate of Chance v. First Corr. Med.*, 329 F. App'x 340 (3d Cir. 2009) (unpublished) (State prison officials were not deliberately indifferent to inmate's serious medical condition, in violation of Eighth Amendment, as result of their cost containment practices, where there was no evidence indicating that officials knew or

---

[2] With regard to the § 1983 claims, the DOC is immune from suit by reason of the Eleventh Amendment. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).

8

had any reason to believe that prison medical staff were not treating or were mistreating inmate, or that officials were indifferent to known risks caused by their cost containment practices.)

The claim is deficiently pled, and the DOC is immune from suit. Accordingly, the court will dismiss the claims as frivolous and based upon the DOC's immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii) and § 1915A(b)(1) and (2).

### C. ADA

Saunders alleges that Brennan and the DOC violated his rights under the ADA when he was housed in a building that was not ADA compliant. *See* ADA, Title II, 42 U.S.C. § 12101 *et seq.* Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* Title II applies to the state prisons, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998), and authorizes private lawsuits for both money damages and injunctive relief against public entities that violate its provisions.[3] *See* 42 U.S.C. § 12133.

To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. *Bowers v. National Collegiate*

---

[3]The ADA claim is raised against Brennan in his individual and official capacity. The Third Circuit has yet to address individual liability under Title II of the ADA. *See Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (unpublished).

*Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir. 2007). Under Title II, a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA. *See Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa*, 483 F. App'x 759, 763 (3d Cir. 2012) (unpublished); *see also* 28 C.F.R. § 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

The third amended complaint fails to establish that Saunders was denied the benefits of the services, programs, or activities because of his disability. He alleges that he was required to shower in an area that lacked handrails or grab bars and refers to one incident when he slipped and fell in October 2013. Saunders makes no mention of the conditions under which he was housed for the remainder of his time in administrative segregation or those which are provided to him in the general population. Allegations of an isolated instance of failing to accommodate a disabled prisoner's condition does not state a claim under the ADA. *See Moore v. Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003). The court finds that the allegations fail to state a claim under the ADA.

Saunders has failed to state ADA claims against the DOC and Brennan. Accordingly, the court will dismiss the ADA claim as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1).

### D. Grievances/Letters

Saunders alleges that he submitted grievances and wrote letters to Welch, Markell, Danberg, Coupe, and medical services providers to no avail. The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006)

(unpublished). To the extent that Saunders bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (unpublished) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Saunders is free to bring a civil rights claim in District Court. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (citing *Flick v. Alba*, 932 F.2d at 729). To the extent Saunders attempts to raise claims based upon letters he wrote to prison officials, those claims, too, do not rise to the level of constitutional violations. *See Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (A prison official's failure to respond to inmate's grievance does not state a constitutional claim).

Saunders cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, that the grievance process is inadequate or that prison officials did not respond to his letters. Therefore, the court will dismiss the claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

**E. Housing**

Finally, Saunders appears to complain that he was housed in administrative segregation for forty-five days before he was transferred to general population. It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Moreover, the custody placement or classification of state

prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225.

Accordingly, the court finds frivolous Saunders' claim that his constitutional rights were violated because he was housed in administrative segregation, and the claim will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## IV. CONCLUSION

For the above reasons, the court will dismiss the complaint as legally frivolous, for failure to state a claim upon which relief may be granted, and as seeking damages from a defendant who is immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii), and (iii) and § 1915A(b)(1) and (2). The court has given Saunders several opportunities to correct his pleading deficiencies, to no avail. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (The court may curtail or deny a request for leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed" and there would be "futility of amendment."). Therefore, the court finds further amendment futile.

An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

__Nov 17__, 2014
Wilmington, Delaware